IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Cesar Gomez-Maldonado, *a Minor*, (Agency No. A98 666 843), | ) ) ) | |
| Appellant | ) ) ) | |
| vs. | ) ) ) | |
| M. YVONNE EVANS, Chief of the Juvenile and Family Residential Management Unit of the Detention and Removal Operations for the Bureau of Immigration and Customs Enforcement in the Department of Homeland Security, THE BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT and THE DEPARTMENT OF HOMELAND SECURITY, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. Judge |
| Appellees. | ) | |

**FILED**
**NOVEMBER 27, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**07 C 6657**

**JUDGE HART**
**MAGISTRATE JUDGE COX**

**CESAR GOMEZ-MALDONADO'S APPEAL OF THE DEPARTMENT OF HOMELAND SECURITY'S DENIAL OF SPECIFIC CONSENT TO STATE JUVENILE COURT JURISDICTION OVER DEPENDENCY PROCEEDING**

Pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 704-706, Cesar Gomez-Maldonado, appellant, files this appeal of the defendants M. Yvonne Evans, the Bureau of Immigration and Customs Enforcement, and the Department of Homeland Security (collectively "DHS")'s Denial of Specific Consent to Pursue A Dependency Order in State Juvenile Court, and requests declaratory and injunctive relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.

**INTRODUCTION**

Cesar Gomez-Maldonado is a seventeen-year-old boy who was physically abused and then abandoned by his parents when he was about seven years old. Cesar does not know where, or indeed exactly when, he was born because his parents did not tell him, or

- 1 -

give him documents, before they abandoned him.  Lacking other relatives, Cesar stayed with various people he met, worked on papaya farms, and lived on the streets of Mexico until arriving in the U.S. on September 28, 2006.  Cesar has been in detention since that day.

Cesar may obtain relief from the current circumstances in which the abuse and abandonment has placed him through a Special Immigrant Juvenile ("SIJ") Visa.  Before Cesar may even apply for SIJ status, however, he must obtain a dependency order from a state juvenile court for being abused, neglected, or abandoned.  Under Illinois law, Cesar qualifies for a dependency order as a neglected or abused minor; either category includes "any minor … who is abandoned by his or her parents."  705 ILCS 405/2-3.  However, Cesar will be ineligible for a dependency order from state juvenile court once he reaches the age of eighteen, on January 15, 2008.  Because Cesar was taken into federal custody upon his arrival in the U.S., DHS must first consent to state juvenile court jurisdiction over Cesar's petition for a dependency order.  Otherwise the dependency order would be invalid for the purpose of applying for an SIJ Visa.  Cesar requested DHS to consent to state court jurisdiction on December 19, 2006.  Despite meeting the statutory and agency criteria for obtaining consent, DHS has repeatedly refused to consent to state juvenile court jurisdiction.  Cesar submitted his most recent request for reconsideration on September 14, 2007, and to date, DHS has not responded.

The SIJ status is particularly crucial in Cesar's case because as a result of being abandoned by his parents without knowledge or proof of where he was born, no country will claim him as a national.  Cesar is thus "stateless" and subject to detention in the U.S. for the rest of his life unless this Court gives him the opportunity to pursue SIJ status.

In this case, DHS's denials of specific consent to juvenile court jurisdiction contravened the law because they were based on mistaken applications of law and fact, which were countered by Cesar's evidence. First, in response to Cesar's initial request, DHS failed to apply the correct criteria and standard in deciding not to grant specific consent. Second, DHS's denial of specific consent was arbitrary and capricious because it was not rationally related to the SIJ provision's statutory purpose, and it was not supported by the facts in the record. Third, despite Cesar's repeated requests to be interviewed, DHS refused to interview Cesar. Finally, the basis of DHS's denial of Cesar's request for reconsideration relies on an erroneous reading of the INA.

As further set forth in detail below, this Court should reverse DHS's denial of specific consent. The law requires federal agencies to follow statutes as enacted by the legislature. The law also requires federal agencies to prescribe standards and apply them uniformly. The federal agencies did not do so here.

Cesar therefore asks this Court to reverse DHS's denial of specific consent under the APA, 5 U.S.C. §§ 704-706, and to grant declaratory and injunctive relief under the DJA, 28 U.S.C. § 2201.

## JURISDICTION

Jurisdiction of the Court is predicated upon the APA, 5 U.S.C. §§ 704-706, which provides for judicial review of a final agency action that has a direct and immediate effect on the party challenging the action. DHS's denial of specific consent to pursue a dependency order in state court is a final agency action, subject to district court review. *Zheng v. Pogash*, 416 F. Supp. 2d 550 (S.D. Tex. 2006); *A.A.M. v. Gonzales*, No. C05-2012C, 2005 U.S. Dist. LEXIS 40482 (W.D. Wash. Dec. 6, 2005) attached as Exh. O.

**STATEMENT OF FACTS**

Cesar is a boy who, as a result of parental abandonment, does not know where or when he was born. *See* Exhs. A at ¶ II, B, H at ¶ 2. Through the evaluation of his dental x-rays by forensic odontologist Dr. John P. Kenney, Cesar's birthday has been determined to be January 15, 1990. *See* Exhs. C, B (confirming the U.S. Office of Refugee Resettlement (ORR)'s acceptance of this birth date). Unfortunately, attempts to determine where Cesar was born have proven less fruitful. Cesar states he does not know where he was born, and Mexico, El Salvador, and Guatemala all do not recognize him as a national. *See* Exh. D ("Cesar has been [*sic*] stated that he cannot identify where is he from."); Exh. E at 2 (Mexican consulate states Cesar is from El Salvador); Exh. F (inability to confirm Cesar as being from El Salvador); Exh. G ("Guatemalan Consulate interviewing minor they [*sic*] determined that Cesar is not from Guatemala").

Cesar was beaten, abused and ultimately abandoned by his parents prior to age seven. Upon returning home one day when he was about seven years old, Cesar discovered that his parents had left. For the next few years, Cesar stayed in the homes of neighbors and other people he met because he has no known relatives. By the time he was eleven or twelve, Cesar had worked on papaya farms for a couple of years and had joined a gang. Before long, Cesar wanted to leave the gang but he feared that he would be killed for doing so. Exh. H. at ¶¶ 2-5. In early September 2006, when Cesar was about sixteen years old, he met a group of people who asked him to join their trip to the U.S. *See* Exh. H at ¶ 6. On September 28, 2006, Cesar entered the U.S., was taken into DHS custody, and questioned. An immigration agent told Cesar to sign a document that the agent described as a representation of the questioning. The contents were never

translated into Spanish for Cesar, but Cesar signed the document as he was instructed. Exh. H. at ¶ 7. Cesar has remained in DHS custody since September 28, 2006. Exh. E.

On December 19, 2006, Cesar requested DHS to grant specific consent to state juvenile court jurisdiction over a petition for a dependency order. Exh. I. DHS denied Cesar's request on February 14, 2007, contending that Cesar had not adequately established his date of birth and identity as required under 8 C.F.R. § 204.11(d) and because DHS did not find Cesar's statements and motives credible. Exh. J at 4. On March 20, 2007, Cesar supplemented his request for specific consent with (1) a report from forensic odontologist Dr. John P. Kenney confirming that as of January 10, 2007, Cesar was under the age of eighteen; (2) an explication of 8 C.F.R. § 204.11(d) clarifying that the statutory provision did *not* require proof of identity to be established; and (3) a request for an interview. Exh. K. In a two-page letter dated June 5, 2007, DHS denied Cesar's request for reconsideration, stating that "the additional evidence submitted in this case does not sufficiently establish that Cesar is an alien eligible for long term foster care as required to establish eligibility for special immigrant juvenile status. *See* 8 C.F.R. 204.11(a)." Exh. L at 1. In light of his imminent eighteenth birthday, Cesar made a second expedited request for reconsideration on September 14, 2007, in which he again requested an interview. Exh. M. To date, DHS has not responded to Cesar.

## ARGUMENT

**I.    THE ORDER OF DHS MISAPPLIED THE SPECIFIC CONSENT STANDARD AND SHOULD BE REVERSED.**

To obtain SIJ status under the Immigration and Naturalization Act ("INA"), the juvenile must have been declared dependent upon a juvenile court in accordance with state law. 8 C.F.R. § 204.11(c)(3). Because Cesar was apprehended by DHS upon

entering the U.S., Cesar must obtain "specific consent" from DHS to grant an Illinois juvenile court jurisdiction over his dependency petition.  8 U.S.C. § 1101(27)(J)(iii)(I).  This means that DHS is the sole gatekeeper for Cesar's opportunity to pursue SIJ status.  In Cesar's case, DHS failed to exercise its duties according to the applicable legal standards.

Under the only agency guidance regarding "specific consent" decisions, specific consent to the juvenile court's jurisdiction "should be granted if: 1) it appears that the juvenile would be eligible for SIJ status if a dependency order is issued, and 2) … the dependency proceeding would be in the best interest of the juvenile."  Exh. N at 1; *See Zheng*, 416 F. Supp. 2d at 559 (reversing DHS's denial of specific consent on the grounds that it failed to follow the Cook Memorandum guidelines and therefore was arbitrary and capricious); *see also A.A.-M.* 2005 U.S. Dist. LEXIS 40482 at *7-*8 (following the Third Circuit and other federal courts in holding that the Cook Memorandum provides a meaningful standard against which to judge the agency's exercise of discretion).  If that standard had been applied correctly here, specific consent should have been granted.

### A.     CESAR WOULD BE ELIGIBLE FOR SIJ STATUS IF HE OBTAINS A  DEPENDENCY ORDER.

Cesar satisfies the first condition of the Cook Memorandum: if a dependency order were issued, he would be eligible for SIJ status because he satisfies the other requirements under the INA.  He is (1) under twenty-one years of age; (2) unmarried; and (3) would continue to be dependent upon a juvenile court at the time of the SIJ petition.  *See* 8 C.F.R. § 204.11(c).  Subsection (c) also requires that Cesar be deemed eligible for long-term foster care, which means that the juvenile court would have to determine that family reunification is not a viable option.  *Id.*; *see* 8 C.F.R. § 204.11(a).

Disregarding the statute's provisions, DHS denied Cesar's request for specific consent to pursue a dependency order from the Illinois juvenile court on the erroneous basis that 8 CFR § 204.11(d)(1) required Cesar to establish his identity. Exh. J at 4. In the denial, DHS misconstrues the law in two ways. DHS first fails to acknowledge the statutory provision Cesar did satisfy and then creates a statutory requirement of establishing identity where none exists.

First, DHS omits the statutory provision that Cesar did satisfy. The INA section provides that "initial documents which must be submitted in support of the petition" for SIJ status include "[d]ocumentary evidence of the alien's age, in the form of a birth certificate, passport, official foreign identity document issued by a foreign government … or other document which in the discretion of the director establishes the beneficiary's age." 8 C.F.R. § 204.11(d)(1). Reports of dental x-rays serve as such an "other document." *M.B. v. Quarantillo*, 301 F.3d 109, 115 (3d Cir. 2002) (INS ordered dental x-rays to establish age of applicant requesting specific consent for SIJ status purposes).

As part of the request for reconsideration, Cesar submitted a report of his dental exam, made by forensic odontologist, Dr. John P. Kenney, which concluded that Cesar was under the age of eighteen as of January 10, 2007. Exh. K. Cesar also submitted a copy of the e-mail from Maureen Dunn indicating that the ORR accepted Cesar's birth date to be January 15, 1990. Exh. K. Despite providing DHS with a document (that had affirmatively been requested to establish age in a separate case) concluding that Cesar was not yet eighteen years old in January 2007, an e-mail from a federal agency recognizing Cesar's birth date as January 15, 1990, and despite the reality that to this day, Cesar continues to be held in a juvenile facility, DHS affirmed the initial denial, which

claimed that "Cesar has failed to submit sufficient proof to establish his age." Exhs. L at 1; J at 4. Thus, even though Cesar has submitted evidence, in a form that DHS has relied on in the past to establish age, the agency did not acknowledge the dental report or the statutory provision it satisfied.

Second, the statute does not require Cesar to establish his identity, only his age. DHS's contention that Cesar must establish his identity pursuant to the INA is incorrect. Moreover, to require Cesar to establish his identity with official documents before granting specific consent undermines the very purpose of SIJ status. The legislative history of the SIJ provision reflects that it was intended to benefit "abandoned, neglected, or abused children" H.R. Rep. No. 105-405 at 2981 (1997), 1997 WL 712946, at 130. As a class, these children are not likely to have control or ownership of their birth certificates or other official identity documents. *See* Exh. O (Paul Weiss, *The International Protection of Refugees*, 48 Am. J. Int'l L. 2, 193-94 (Apr. 1954) (noting that stateless individuals often lack official documents)). To exclude unaccompanied minors from seeking SIJ status because they lack official identity documents would deny the SIJ provision the power to protect its intended beneficiaries.

### B.  SPECIFIC CONSENT IS IN THE BEST INTERESTS OF THE CHILD.

Cesar satisfies the second condition of the Cook Memorandum because granting specific consent to pursue a dependency order would be in the best interest of the child. Because Cesar's parents abandoned him at a young age without telling him where he was born and without leaving him identity documents, Cesar is stateless. *See* Exhs. E, F, G. If Cesar is granted the opportunity to petition for SIJ status—for which he must have a dependency order from a state juvenile court—and if he is successful, this seventeen-

year-old would have the chance to recover from the abuse and abandonment he suffered. At the conclusion of applying for SIJ status, Cesar would also have the chance to become a legally recognized and productive member of our society.  But if Cesar is not allowed to petition for SIJ status, he faces incarceration, or "detention," in the U.S. for the remainder of his life.

## II.  THIS COURT SHOULD REVERSE THE DENIAL OF SPECIFIC CONSENT BECAUSE IT WAS ARBITRARY AND CAPRICIOUS.

According to DHS's own standards, specific consent should be granted if (1) doing so serves the minor's best interests and (2) it appears that the minor would be eligible for SIJ classification.  Exh. N at 1.  Because, as set forth below, DHS's denial of specific consent is not rationally related to the SIJ provision's statutory purpose and it is not supported by facts in the record, the decision is arbitrary, capricious, and reversible under the APA.  *See Hondros v. United States Civil Service Comm'n*, 720 F.2d 278, 295-96 (3d Cir. 1983).

### A.  DHS'S DENIAL ON THE GROUNDS THAT CESAR DID NOT ESTABLISH HIS IDENTITY IS NOT RATIONALLY RELATED TO THE PURPOSE OF THE SIJ PROVISION AND SHOULD BE REVERSED.

The INA does not require that children produce evidence of identity or nationality before specific consent is granted.  *See* 8 C.F.R. § 204.11(d).  The purpose of the SIJ provision in the INA is to "protect abandoned, abused, or neglected children."  H.R. Rep. No. 105-405 at 2981 (1997), 1997 WL 712946, at 130.  Congress added the specific consent requirement to the SIJ provision to curb foreign exchange students seeking to bypass immigration procedures for obtaining permanent residency, not to address the circumstances presented by Cesar here.  *Zheng*, 416 F. Supp. 2d at 554 n.5.

Specific consent is not meant to preclude the provision's intended beneficiaries from applying for SIJ status because they were abused and abandoned without official paperwork. *See id.* Indeed, to serve these children, it is not rational to require that they first produce documentation of their identities. It is the very children who are most in need of protection because they have been abandoned, abused, or neglected who are also most likely to lack such civil records. *See* Exh. O at 193-94. Cesar's parents, who were often drunk and physically abusive, did not tell him where he was born. Nor did they have the forethought to leave a copy of his birth certificate for him before abandoning him at the age of seven. Exh. H. at ¶ 2.

Thus, not only is DHS's denial of specific consent on the basis that Cesar has not provided an official identity document to establish identity simply not required by law, it contravenes the very purpose of the SIJ provision. As discussed earlier, DHS misattributes the requirement of evidence of identity to 8 C.F.R. § 204.11(d)(1), but the purpose of the evidence discussed in that section is to establish age, not identity. Exh. J. at 4. In fact, the only place identity documentation is discussed is the agency's own Cook Memorandum: "additional documentation submitted with the [SIJ] petition *should* include evidence of the juvenile's date and place of birth." Exh. N at 2 (emphasis added).

Even in the memorandum, the language is "should," not "must." Therefore, the lack of documentation of the juvenile's place of birth is not dispositive to the success of the SIJ petition. Moreover, as an administrative agency, DHS's internal policy is due deference only to the extent of its power to persuade. *Skidmore v. Swift and Co.*, 323 U.S. 134 (1944). To the extent that the memorandum is in conflict with the statutory provision, the statute controls. *Quarantillo*, 301 F.3d at 115. Here, a requirement of

identity documents opposes the core purpose of the SIJ provision, which is to protect abused, neglected, or abandoned children, and thus, a denial of specific consent based on that requirement should be reversed.

> **B.    FACTS IN THE RECORD SUPPORT THAT CESAR ESTABLISHED HIS AGE AND DHS'S DENIAL SHOULD BE REVERSED.**

The INA recognizes "[d]ocumentary evidence of the alien's age, in the form of a birth certificate, passport, official foreign identity document issued by a foreign government … or other document which in the discretion of the director establishes the beneficiary's age." 8 C.F.R. § 204.11(d)(1). Reports of dental x-rays serve as such an "other document." *Quarantillo*, 301 F.3d at 110 (affirming DHS's denial of specific consent because dental x-rays established applicant was *over* the age of eighteen).

As discussed above, Cesar provided DHS evidence of his age. Despite receiving copies of a forensic odontologist's conclusion that Cesar's dental x-rays established that he was *under* the age of eighteen in January 2007 and an e-mail from a federal agency recognizing Cesar's birth date as January 15, 1990, as well as the fact Cesar continued to be held in a juvenile facility, DHS affirmed its initial decision based in part on the view that "Cesar has failed to submit sufficient proof to establish his age." Exhs. L at 1; J at 4. Because DHS's contention that Cesar has not submitted evidence to establish his age finds no support from facts in the record, it is arbitrary and capricious. Accordingly, the denial of specific consent should be reversed.

> **C.    THE RECORD DOES NOT SUPPORT DHS'S ASSUMPTION THAT CESAR LACKS CREDIBILITY.**

DHS's repeated denials of Cesar's requests for specific consent based on abandonment and abuse are not supported by the law or the facts; instead, they are based

on one individual's "doubt as to the authenticity of Cesar's statements and motives." Exh. J at 4.  This unsubstantiated doubt prevailed over the documentary evidence Cesar submitted and improperly led DHS not to conduct any interview of Cesar over the course of eleven months.

DHS must interview a minor requesting specific consent to pursue a dependency order in state court before denying the request on grounds of credibility.  *A.A.-M.*, 2005 U.S. Dist. LEXIS 40482 at *9; *see also Zheng*, 416 F. Supp 2d at 558 (recognizing that DHS needed to base its assessment of credibility on more than the applicant's interview with DHS upon his initial detention).  Not to do so is an abuse of discretion.  *A.A.-M.*, 2005 U.S. Dist. LEXIS 40482 at *9.

Cesar asks this Court to follow *A.A.-M. v. Gonzales*, which reversed DHS's specific consent denials because—just as here—the agency assessed credibility "without having engaged [the applicant] in so much as a telephone conversation."  2005 U.S. Dist. LEXIS 40482 at *9.  In *A.A.-M.*, DHS denied specific consent because the applicant did not mention that he feared returning home in early ICE interviews, and because evaluations by advocacy groups were allegedly "self-serving."  2005 U.S. Dist. LEXIS 40482 at *3.  The court held that the cursory nature of DHS's investigation into dispositive credibility issues was arbitrary and capricious conduct and an abuse of discretion as circumscribed by the Cook Memorandum.  *Id.* at *10-*11.

Similarly, in this case, DHS denied Cesar permission to participate in a juvenile dependency proceeding based on unexplored and unconfirmed inconsistencies in the paper record.  DHS dismissed Cesar's statements of physical abuse and abandonment by his parents as "self-serving" even though psychological evaluations and notes from

counselors in the record find Cesar's account credible.  Exh. J at 4; *see* Exh. K at 7-8.  DHS contended, without any foundation, that Cesar's "lack of knowledge of his date of birth; and lack of information regarding his parents' identity" along with his allegedly contradictory statements regarding his nationality "cast significant doubt on the authenticity of Cesar's statements and motives."  Exh. J. at 4.

But it is entirely unclear why DHS cites Cesar's lack of knowledge of his parents' and his own biographical information to substantiate doubt of Cesar's story.  After all, the unavailability of this type of knowledge is precisely consistent with Cesar's account of abandonment.  Additionally, DHS does not refer to any evidence whatsoever that questions Cesar's account of abuse and abandonment and ignores the reports of professionals who have interacted with Cesar in these past eleven months that take no issue with Cesar's credibility.  Exhs. A, B, D and K at 7-8.

Finally, DHS contends that Cesar's credibility falters regarding his nationality.  Referring to Form I-213, DHS contends that Cesar claimed to be a citizen of Mexico during his initial interview with DHS.  Exh. J at 4.  Yet, Form I-213 shows that Cesar did not claim to be a citizen of Mexico; indeed, Cesar is recorded as stating that he "illegally entered" Mexico with his mother in 1995.  Exh. E.  However, Form I-213 also reflects that Cesar is an El Salvadoran citizen as well as a citizen of Mexico.  The immigration officer who completed the form offered no explanation for the apparent inconsistency.  *See* Exh. E.  Cesar states that no one translated the statements recorded on Form I-213 into Spanish before having him sign it.  Exh. H. at ¶ 7.

Nevertheless, DHS asserts in its denial of specific consent that Cesar claimed to be a citizen of Mexico during his initial encounter with DHS agents, and because the

*Mexican* "consular official determined that Cesar was, in fact, a citizen of El Salvador," DHS decided that Cesar was a citizen of El Salvador. Cesar does not know where he was born. Cesar's lack of nationality has been confirmed by the consulates of Mexico, El Salvador, and Guatemala. Exhs. E, F, G. Despite Cesar's repeated accounts of his unknown nationality and external support for them, DHS decided not to seek clarification of the information on Form I-213 and instead took the word of a Mexican consular official regarding who is an El Salvadorian citizen to characterize Cesar's account of his nationality as "inconsistent and contradictory." Exh. J at 4. DHS refused Cesar's repeated requests to be interviewed, and its arbitrary and capricious review led to its erroneous conclusion regarding Cesar's credibility. Consequently, DHS's denial should be reversed as arbitrary and capricious and an abuse of discretion. *See A.A.-M.*, 2005 U.S. Dist. LEXIS 40482 at *10-*11.

>   D.  **THE BASIS FOR DENYING RECONSIDERATION FINDS NO SUPPORT FROM THE FACTS ON THE RECORD AND IS OUTSIDE THE SCOPE OF DHS'S AUTHORITY**.

In response to Cesar's request for reconsideration with supplemental evidence, DHS affirmed its initial denial on a new basis: "the additional evidence submitted in this case does not sufficiently establish that Cesar is an alien eligible for long term foster care as required to establish eligibility for special immigrant juvenile status. *See* 8 C.F.R. 204.11(a)." Exh. L. at 1. Section 204.11(a) provides that special immigrant juvenile status is appropriate for a juvenile who has been found "eligible for long-term foster care [which] means that a determination has been made by the juvenile court that family reunification is no longer a viable option." 8 C.F.R. 204.11(a). The INA reserves for the state juvenile court all determinations regarding the veracity of a juvenile's claims of

abuse, neglect, or abandonment.  8 U.S.C. §1101(a)(27)(J)(i).  DHS's conclusion that Cesar had not established that he would be eligible for long term foster care is not only factually doubtful, given that Cesar was abandoned by his parents when he was approximately seven years old and has no known family with whom to reunite, but it is outside the scope of the authority conferred to the agency by the INA.  The denial of reconsideration therefore should be reversed.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated above, Cesar respectfully requests that this Court reverse DHS's denial of specific consent under the APA; declare that the denials of Cesar's request for specific consent violated the INA; require DHS to consent to state court jurisdiction so that Cesar may seek a dependency order; enjoin DHS from denying Cesar's petition for SIJ status on the grounds that the juvenile court lacked jurisdiction or that the dependency order was otherwise invalid; and grant any further relief to which he may be justly entitled.

Dated:  November 27, 2007　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　By:　  s/Howard S. Suskin　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　One of Appellant's Attorneys

Howard S. Suskin (# 6185999)
Grace S. Ho (# 6293010)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484