**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Cesar Gomez-Maldonado, *a Minor*, (Agency No. A98 666 843), | ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | |
| M. YVONNE EVANS, Chief of the Juvenile and Family Residential Management Unit of the Detention and Removal Operations for the Bureau of Immigration and Customs Enforcement in the Department of Homeland Security, THE BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT and THE DEPARTMENT OF HOMELAND SECURITY, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 07 C 6657  Judge Hart  Magistrate Judge Cox |
| Defendants. | ) | |

**PLAINTIFF CESAR GOMEZ-MALDONADO'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.**

Plaintiff Cesar Gomez-Maldonado ("Cesar") seeks an Order to require defendants, collectively "DHS," to consent to state juvenile court jurisdiction over his petition for a dependency order and to prohibit DHS from denying him Special Immigrant Juvenile ("SIJ") status on the grounds that the juvenile court lacked jurisdiction or that the dependency order was otherwise invalid.

Cesar's need for emergency injunctive relief is acute. Cesar was abandoned by his parents at the age of seven, and he is "stateless." He does not know where he was born, and Mexico, Guatemala, and El Salvador all contend that he is not a national. Consequently, if Cesar is ordered removed, he will have no country to be removed *to*, resulting in Cesar's physical detention in the U.S, possibly for the remainder of his life.

- 1 -

Cesar may obtain relief from the current condition in which his childhood of abuse and abandonment has left him through a SIJ Visa.  Before Cesar may even apply for SIJ status under the Immigration and Naturalization Act ("INA"), he must obtain a dependency order for being abused, neglected, or abandoned from a state juvenile court.  Under Illinois law, Cesar will be ineligible for a dependency order from state juvenile court once he reaches the age of eighteen on January 15, 2008.  Because Cesar was taken into DHS custody upon his arrival in the U.S., DHS must first consent to state juvenile court jurisdiction over Cesar's petition for a dependency order, or else the order would be invalid for the purpose of supporting an SIJ Visa application.  Cesar requested DHS's consent to state court jurisdiction on December 19, 2006.  Despite meeting the statutory and agency criteria for obtaining consent, DHS has repeatedly refused to consent to state juvenile court jurisdiction.  Cesar submitted his most recent request for reconsideration on September 14, 2007, and to date, DHS has not responded.

In the interim, Cesar is precluded from even starting the process of seeking SIJ status, and he will suffer irreparable harm if a temporary restraining order and preliminary injunction are not entered (1) requiring DHS to consent to state juvenile court jurisdiction over Cesar's dependency petition and (2) prohibiting DHS from denying Cesar's petition for an SIJ Visa on the grounds that the juvenile court lacked jurisdiction or that the dependency order was otherwise invalid.

## STATEMENT OF FACTS

Cesar is a boy who, as a result of parental abandonment, does not know where or when he was born.  *See* Exhs. A, B, H at ¶ 1.  Through the evaluation of Cesar's dental x-rays, forensic odontologist Dr. John P. Kenney determined Cesar's birthday to be January

15, 1990.  *See* Exhs. C, B (confirming U.S. Office of Refugee Resettlement's acceptance of birth date).  Unfortunately, attempts to determine where Cesar was born have proven less fruitful.  Cesar states he does not know where he was born, and Mexico, El Salvador, and Guatemala all do not recognize him as a national.  *See* Exh. D ("Cesar has been [*sic*] stated that he cannot identify where is he from."); Exh. E (Mexican consulate states Cesar is from El Salvador); Exh. F (inability to confirm Cesar as being from El Salvador); Exh. G ("Guatemalan Consulate interviewing minor they [*sic*] determined that Cesar is not from Guatemala").

Cesar was abused and ultimately abandoned by his parents.  Cesar's parents were often drunk and regularly beat him before he was seven.  Upon returning home one day at about the age of seven, Cesar discovered that his parents had left.  Because Cesar has no known relatives, he stayed in the homes of neighbors and other people he met.  By the time Cesar was about eleven or twelve, he had worked on papaya farms for a couple of years and had joined a gang.  Eventually, Cesar wanted to leave the gang but feared that he would be killed for doing so.  Exh. H. at ¶¶ 2-5.  In early September 2006, Cesar met a group of people who asked him to join their trip to the U.S.  Exh. H. at ¶ 6.  Cesar entered the U.S. on September 28, 2006, and has been in federal custody since that day.  Exh. E.

On December 19, 2006, Cesar requested specific consent from DHS to petition for a dependency order in state juvenile court.  Exh. I.  DHS denied Cesar's request on February 14, 2007 because DHS contended that Cesar had not adequately established his date of birth and identity as required under 8 C.F.R. § 204.11(d) and because DHS did not find Cesar's statements and motives credible.  Exh. J at 4.  The INA does not require that an applicant for SIJ status establish identity or nationality.  *See* 8 C.F.R. § 204.11(d).

However, DHS's internal guidance provides that "additional documentation submitted with the [SIJ] petition *should* include evidence of the juvenile's date and place of birth." Exh. N. (emphasis added).

On March 20, 2007, Cesar supplemented his request for specific consent with (1) a report from forensic odontologist Dr. John P. Kenney confirming that as of January 10, 2007, Cesar was under the age of eighteen; (2) an explication of 8 C.F.R. § 204.11(d) clarifying that the statutory provision did *not* require proof of identity to be established; and (3) a request for an interview. Exh. K. On June 5, 2007, DHS, failing to acknowledge Cesar's evidence that satisfied 8 C.F.R. § 204.11(d) and the fact that the statutory provision did not require evidence of identity, denied the request for reconsideration on a new basis: "the additional evidence submitted in this case does not sufficiently establish that Cesar is an alien eligible for long term foster care as required to establish eligibility for special immigrant juvenile status. *See* 8 C.F.R. 204.11(a)." Exh. L at 1. In light of his imminent eighteenth birthday, Cesar made a second expedited request for reconsideration on September 14, 2007, in which he again requested an interview. Exh. M. To date, DHS has not responded to Cesar.

Consequently, Cesar has been barred from even applying for SIJ status. Once Cesar becomes eighteen years old, he will be ineligible for a dependency order in Illinois. Without a dependency order from state juvenile court, Cesar would remain unable to apply for SIJ status, and he would face indefinite detention in the U.S.

**ARGUMENT**

To prevail on a motion for a temporary restraining order or preliminary injunction, a plaintiff must establish: (1) likelihood of success on the merits; (2) threat of

- 4 -

irreparable harm; (3) inadequate remedy at law; (4) that the balance of hardships favors issuing injunctive relief; and (5) that the public interest would be served. *See Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003); *Protamek Indus. Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002); *Ty Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). In considering these factors, the Court should apply a sliding scale approach: the greater the movant's likelihood of success on the merits, "the less strong a showing the movant must make that the balancing of harms weighs in his favor." *Foodcomm*, 328 F.3d at 303, *Ty*, 237 F.3d at 895-96 (the sliding scale approach is not mathematical in nature but rather subjective and intuitive to permit the Court to "model appropriate relief"). Cesar satisfies all of these requirements.

## I. CESAR IS LIKELY TO PREVAIL ON THE MERITS OF HIS CLAIMS.

A likelihood of success on the merits exists if a party shows that it has a "better than negligible" chance of succeeding on the merits. *Ty*, 237 F.3d at 878; *Omega Satellite Products Co. v. City of Indianapolis*, 649 F.2d 119, 123 (7th Cir. 1982). In order to prevail on the merits of his complaint, Cesar must show that DHS's denial of specific consent contravened the INA. Cesar satisfies this requirement because DHS misconstrued and misapplied the INA. DHS first fails to acknowledge the statutory provisions Cesar did satisfy; then DHS creates a statutory requirement of establishing identity where none exists. In addition, DHS fails to follow federal case law or apply its internal guidance correctly in denying specific consent.

### A. DHS MISAPPLIED THE LAW IN DENYING CESAR'S REQUEST FOR RECONSIDERATION.

DHS's denial of reconsideration of Cesar's request for specific consent to state juvenile court jurisdiction over his dependency petition rests on misapplications of the

INA: DHS determined that Cesar had not established his age and that a state juvenile court would not find him eligible for long term foster care. First, DHS omits the statutory provision of 8 C.F.R. § 204.11(d)(1) that Cesar did satisfy in order to characterize Cesar's application as having failed to meet the requirement of establishing age. The provision states that "initial documents which must be submitted in support of the petition" for SIJ status include "[d]ocumentary evidence of the alien's age, in the form of a birth certificate, passport, official foreign identity document issued by a foreign government … or other document which in the discretion of the director establishes the beneficiary's age." 8 C.F.R. § 204.11(d)(1). Reports of dental x-rays serve as such an "other document." *M.B. v. Quarantillo*, 301 F.3d 109, 110 (3d. Cir. 2002) (INS ordered dental x-rays to establish age of individual seeking specific consent to state court jurisdiction).

DHS misapplied the INA when it refused to recognize the forensic odontologist's report, determining that Cesar had not reached eighteen years of age by January 10, 2007, as sufficient to establish Cesar's age. Exhs. K, C. Cesar also submitted a January 29, 2007 e-mail composed by Maureen Dunn, Director of the Department of Unaccompanied Children's Services, indicating that the U.S. Office of Refugee Resettlement (ORR) accepted Cesar's birth date to be January 15, 1990. Exh. K. Despite providing DHS with a document (that had been affirmatively requested to establish age in a separate case) concluding that Cesar was not yet eighteen years old in January 2007, ORR's recognition of Cesar's birth date as January 15, 1990, and the reality that Cesar continues to be held in a juvenile facility, DHS failed to acknowledge the evidence and the statutory provision it satisfied and affirmed its initial denial which was based on the assertion that "Cesar has failed to submit sufficient proof to establish his age." Exh. L at 1; Exh. J at 4.

Second, DHS erred when it determined that Cesar had not established that he would be eligible "for long term foster care" as defined in 8 C.F.R. § 204.11(a). Exh. L at 1. Section 204.11(a) defines "eligible for long term foster care" to mean that a determination has been made by the juvenile court that family reunification is no longer a viable option. The INA reserves for the state juvenile court all determinations regarding the veracity of a juvenile's claims of abuse, neglect, or abandonment. 8 U.S.C. § 1101(a)(27)(J)(i). Consequently, DHS's conclusion that Cesar had not established that he would be eligible for long term foster care is not only factually doubtful, given that Cesar was abandoned by his parents when he was approximately seven years old and has no known family with whom to reunite, but it is outside the scope of the authority conferred to the agency by the INA. *See Ty*, 237 F.3d at 878

### B.     DHS MISCONSTRUED THE LAW IN REQUIRING CESAR TO ESTABLISH IDENTITY.

DHS denied Cesar's initial request for specific consent to Illinois juvenile court jurisdiction over Cesar's dependency petition on the erroneous basis that 8 C.F.R. § 204.11(d)(1) required Cesar to establish his identity. Exh. J at 4. In fact, the INA does not require Cesar to establish his identity, only his age. *See* 8 C.F.R. § 204.11(d).

The only site where identity documents are discussed in relation to applications for SIJ status is DHS's own internal guidance: "additional documentation submitted with the [SIJ] petition *should* include evidence of the juvenile's date and place of birth." Exh. N. (emphasis added). As an administrative agency, DHS's internal policy is due deference only to the extent of its power to persuade. *Skidmore v. Swift and Co.*, 323 U.S. 134 (1944). To the extent that the internal regulations are in conflict with the statutory provision, the statute controls. *Quarantillo*, 301 F.3d at 115.

To require Cesar to establish his identity with official documents before granting specific consent undermines the core purpose of the SIJ provision. The legislative history of the SIJ provision reflects that it was intended to benefit "abandoned, neglected, or abused children" H.R. Rep. No. 105-405 at 2981 (1997), 1997 WL 712946, at 130. As a class, these children are not likely to have control or ownership of their birth certificates or other official identity documents. *See* Exh. P (Paul Weiss, *The International Protection of Refugees*, 48 Am. J. Int'l L. 2, 193-94 (Apr. 1954) (noting that stateless individuals often lack official documents)). To exclude unaccompanied minors from seeking SIJ status because they lack official identity documents would deny the SIJ provision the power to protect its intended beneficiaries. Thus, to the extent that DHS's guideline that identity documents should be submitted with SIJ petitions is applied as a requirement for obtaining specific consent for juvenile court jurisdiction over dependency petitions or for the ultimate granting of SIJ status, that guideline contravenes the INA and is thus invalid. *See* 8 C.F.R. § 204.11(d); H.R. Rep. No. 105-405 at 2981 (1997), 1997 WL 712946, at 130; *see Skidmore*, 323 U.S. 134; *Quarantillo*, 301 F.3d at 115.

Here, DHS's contention that Cesar must establish his identity pursuant to the INA is both a clear error and an improper exercise of legislation from the executive branch.

### C. DHS ABUSED ITS DISCRETION IN MAKING A CREDIBILITY DETERMINATION WITHOUT INTERVIEWING CESAR.

DHS must interview a minor requesting specific consent to pursue a dependency order in state court before denying the request on grounds of credibility. *A.A.-M. v. Gonzales*, No. C05-2012C, 2005 U.S. Dist. LEXIS 40482 at * 9 (W.D. Wash. Dec. 6, 2005) attached as Exh. O; *see also Zheng*, 416 F. Supp 2d at 558 (recognizing that DHS needed to base its assessment of credibility on more than the applicant's interview with

DHS upon his initial detention). Not to do so is an abuse of discretion. *A.A.-M.*, 2005 U.S. Dist. LEXIS 40482 at * 9.

Cesar asks this Court to follow *A.A.-M. v. Gonzales*, which reversed DHS's specific consent denials because—just as here—the agency assessed credibility "without having engaged [the applicant] in so much as a telephone conversation." 2005 U.S. Dist. LEXIS 40482 at * 9. DHS dismissed Cesar's statements of physical abuse and abandonment by his parents as "self-serving" even though psychological evaluations and notes from counselors in the record find Cesar's account credible. Exh. J at 4; Exh.K at 7-8. DHS does not refer to any evidence whatsoever that questions Cesar's account of abuse and abandonment and ignores the reports of professionals who have interacted with Cesar in these past eleven months that take no issue with Cesar's credibility. Exhs. A, B, D. Because DHS refused to interview Cesar notwithstanding Cesar's repeated requests for interviews, and yet denied specific consent based upon a credibility determination, DHS's denial was an abuse of discretion. *See A.A.-M.*, 2005 U.S. Dist. LEXIS 40482 at *10-*11.

### D. DHS FAILED TO FOLLOW ITS OWN GUIDELINES IN DENYING SPECIFIC CONSENT.

Under the only agency guidance regarding "specific consent" decisions, specific consent to the juvenile court's jurisdiction "should be granted if: 1) it appears that the juvenile would be eligible for SIJ status if a dependency order is issued, and 2) … the dependency proceeding would be in the best interest of the juvenile." Exh. N at 1; *See Zheng*, 416 F. Supp. 2d at 559 (reversing DHS's denial of specific consent on the grounds that it failed to follow the Cook Memorandum guidelines and therefore was arbitrary and capricious); *see also A.A.-M.* 2005 U.S. Dist. LEXIS 40482 at *7-*8 (following the Third

Circuit and other federal courts in holding that the Cook Memorandum provides a meaningful standard against which to judge the agency's exercise of discretion). If that standard had been applied correctly here, specific consent should have been granted.

Cesar satisfies the first condition of the Cook Memorandum: if a dependency order were issued, he would be eligible for SIJ status because he satisfies the other requirements under the INA. He is (1) under twenty-one years of age; (2) unmarried; and (3) would continue to be dependent upon a juvenile court at the time of the SIJ petition. *See* 8 C.F.R. § 204.11(c).

Cesar satisfies the second condition of the Cook Memorandum because granting specific consent would be in the best interest of the child. Because Cesar's parents abandoned him at a young age without telling him where he was born and without leaving him identity documents, Cesar is stateless. Exhs. E, F, G. If Cesar is granted the opportunity to petition for SIJ status—for which he must have a dependency order from a state juvenile court—and if he is successful, this seventeen-year-old would have the chance recuperate from his childhood abuse and abandonment. At the conclusion of the SIJ Visa application process, Cesar would also have the chance to become a legally recognized and productive member of society. But, if Cesar is not allowed to petition for SIJ status, he faces incarceration, or "detention," in the U.S. for the remainder of his life.

## II.   CESAR WILL SUFFER IRREPARABLE HARM IF DHS IS NOT ENJOINED.

Irreparable harm is defined as "harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Machine Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Once Cesar turns eighteen years old on January 15, 2008, he will become ineligible for the dependency order, which is necessary for a successful SIJ Visa

application. Therefore, if consent to state juvenile court jurisdiction over Cesar's petition for a dependency order is not granted immediately, Cesar will be effectively precluded from obtaining SIJ status. The hardship that would result if Cesar is not permitted to seek SIJ status is grave: Cesar may be issued a final order of removal, but without a country to be returned to, Cesar faces indefinite incarceration in the U.S. *See* Exhs. E, F, G.

### III.   CESAR HAS NO ADEQUATE REMEDY AT LAW.

An "inadequate remedy at law does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Foodcom*, 328 F.3d at 304; *see A.A.-M*, 2005 U.S. Dist. LEXIS 40482 at *11 (granting TRO, holding that remand for reconsideration is clearly insufficient remedy where the plaintiff would be unable to complete the SIJ Visa application process before his eighteenth birthday).

Here, DHS has improperly denied Cesar access to a juvenile court for the past eleven months, leaving him with no option but to request expedient relief from this Court to pursue SIJ status before his eighteenth birthday on January 15, 2008. If a preliminary injunction is not issued, Cesar will effectively be precluded from seeking SIJ status—his chance at leading a physically unconstrained and legally legitimate existence—on the basis of unfounded assumptions and misapplications of the law.

### IV.   THE BALANCE OF HARDSHIPS STRONGLY FAVORS CESAR.

The balancing of the harms involves a "sliding scale" analysis: the greater the movant's likelihood of success on the merits, the less strong a showing the movant must make that the balancing of harms weighs in his favor. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994).

Not only is Cesar's likelihood of success great, the harm that Cesar faces if expedient injunctive relief is not granted will be irreparable.  By contrast, the hardship to DHS if it is restrained is minimal.  Cesar faces a lifetime of detention if the TRO and preliminary injunction are denied; DHS would only be required to lawfully implement the INA and abide by its own internal guidance if the relief is granted.

Moreover, the INA establishes a four-step procedure by which unmarried immigrants under 21 years old, who are in DHS custody, may obtain SIJ status.  *See* 8 U.S.C. §1101(a)(27)(J).  First, the minor must request and obtain specific consent from DHS (acting on behalf of the Attorney General) to proceed before a state juvenile court.  *See* §1101(a)(27)(J)(iii)(I).  Second, the state court must declare the minor dependent on the court and commit him or her to long-term foster care due to abuse, abandonment or neglect.  §1101(a)(27)(J)(I).  Third, the court must determine that it is not in the child's best interest to be returned to the country of nationality or of last habitual residence.  §1101(a)(27)(J)(ii).  Fourth, the minor must obtain DHS's express consent to the dependency order.  §1101(a)(27)(J)(iii).

Cesar challenges DHS's actions during the first step of this process, which have barred him from proceeding to any of the other steps.  Assuming that Cesar successfully obtains a dependency order from a juvenile court, DHS then must give express consent to the dependency order before SIJ status can be achieved.  In short, DHS is not automatically bound by the dependency order of the state juvenile court, and thus has little to lose by granting consent.  Cesar stands to lose the opportunity to obtain relief from his childhood of abuse and abandonment through the protection of the SIJ status.  The facts and the law clearly favor awarding the injunction.

## V. THE INJUNCTION WILL ADVANCE THE PUBLIC INTEREST.

Enjoining DHS from denying consent to allow Cesar to petition for a dependency order in Illinois juvenile court will further the public interest because it will (1) give effect to the purpose of the SIJ provision, which is to protect abandoned, neglected, and abused children, and (2) prevent an executive administrative agency from improperly legislating.

### 1. Enjoining DHS From Denying Cesar Specific Consent Furthers Protection Of Abandoned, Neglected, Or Abused Children.

Allowing Cesar to pursue a dependency order in Illinois juvenile court will serve the public interest because it will apply the SIJ provision to its intended beneficiary: abandoned, neglected or abused children. Additionally, it will have DHS to apply its standards according to the law. Currently, DHS's responses to requests for specific consent to state court jurisdiction do not apply lawful, consistent standards. *See* Exh. P.

DHS denied Cesar's initial request for specific consent because Cesar did not establish his identity "as is required by" 8 C.F.R. § 204.11(d), which precluded DHS from addressing any of the other eligibility requirements. Exh. J at 5. Cesar's request for reconsideration clarified that Section 204.11(d) did not require evidence of identity but only age. Exh. K. In the denial of Cesar's request for reconsideration, DHS did not address the requirements of Section 204.11(d); instead DHS denied the request on the basis that Cesar did not establish that he was eligible for "long term foster care" under 8 C.F.R. § 204.11(a). Leaving aside the inaccuracy of both reasons for denying specific consent, DHS does not apply the same standards to the same case. First, DHS rejects the petition on the mistaken belief that Cesar must establish identity; DHS then rejects the

request for reconsideration based on the factually questionable and legally impermissible belief that Cesar will not convince a juvenile court that he is eligible for long term foster care.

In addition to the exemplification of arbitrary and capricious decision-making by DHS in Cesar's case and the illustrations found in the recent cases of *A.A.-M.* and *Zheng*, lawyers nationwide, from Washington, D.C. to Pennsylvania to Texas, have submitted letters reporting the arbitrary and capricious nature of DHS's denials of specific consent and responses to requests for reconsideration. *See A.A.-M.*, 2005 U.S. Dist. LEXIS 40482; *Zheng*, 416 F. Supp. 2d 550; Exh. P. It is in the public interest for DHS to conduct its review of specific consent requests in a uniform, lawful manner so that abandoned, neglected, or abused children may benefit from the law as Congress intended and so that fewer judicial resources are expended in correcting DHS's errors.

### 2. Enjoining DHS From Denying Cesar Specific Consent Curbs Improper Executive Encroachment On Legislative Power.

In three moves, DHS attempts to codify the requirement of identity documentation, a basis for denying Cesar's initial request for specific consent to state juvenile court jurisdiction: (1) DHS renders an internal agency recommendation into a requirement; (2) DHS elevates that "requirement" from an internal guideline to statutory law by (3) misattributing the internal "requirement" to the INA. Exh. J at 4; *see* Exh. N; *see* 8 C.F.R. 204.11. Not only did DHS misapply the law, it re-wrote a portion of the INA. This Court should check DHS's improper legislating and order DHS to consent, pursuant to 8 U.S.C. § 1101(a)(27)(J)(iii)(I), to the jurisdiction of the Illinois juvenile court to conduct Cesar's dependency hearing and enjoin DHS from denying Cesar's

petition for SIJ status on the grounds that the juvenile court lacked jurisdiction or that the dependency order was otherwise invalid.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated above, Cesar respectfully requests that this Court issue a temporary restraining order and a preliminary injunction (1) requiring DHS to grant specific consent for the state juvenile court to have jurisdiction over Cesar's petition for a dependency order and (2) prohibiting DHS from denying Cesar's petition for SIJ status on the grounds that the juvenile court lacked jurisdiction or that the dependency order was otherwise invalid.

Dated:  November 27, 2007                                  Respectfully submitted,


                                                           By:   s/Howard S. Suskin
                                                                 One of Plaintiff's Attorneys

Howard S. Suskin (# 6185999)
Grace S. Ho (# 6293010)
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Telephone: 312 222-9350
Facsimile: 312 527-0484