# EXHIBIT J

*Office of Detention and Removal Operations*

**U.S. Department of Homeland Security**
801 I Street, NW
Washington, DC 20536



**U.S. Immigration and Customs Enforcement**

February 14, 2007

Linda Kelly-Hill, Esq.
Professor of Law
Indiana University School of Law
530 W. New York Street
Indianapolis, IN 46202

Re: Cesar Gomez Maldonado (A98 666 843)

Dear Ms. Kelly-Hill:

This responds to your letter dated December 19, 2006, requesting that the Secretary of the Department of Homeland Security (Secretary) relinquish federal custody jurisdiction over your client, Cesar Gomez Maldonado, who is in federal immigration proceedings, and consent to the state juvenile court's exercise of custody jurisdiction. Such relinquishment would allow your client to pursue a Special Immigrant Juvenile (SIJ) classification under section 101(a)(27)(J) of the Immigration and Nationality Act (INA).

I. Background

A. Factual Background

Cesar Gomez Maldonado (hereinafter "Cesar") is a 17-year-old male, native and citizen of El Salvador. After wading through the Rio Grande River and crossing into the United States illegally, immigration officials apprehended Cesar on September 28, 2006. Cesar stated that he departed San Salvador, El Salvador on January 15, 1995, with his mother; and that they traveled by bus to the Mexico/Guatemala border, entering Mexico on the same day. Cesar continued by stating that he remained in Mexico, living and working there until September 24, 2006, when he traveled by bus from Juarez, Mexico, arriving at the Mexico/U.S. border and crossing into the United States illegally on September 28, 2006. He further stated that he intended to travel to Los Angeles, California to seek employment. During this interview, Cesar claimed to be a citizen of Mexico and was processed as such until a further, more intensive interview was conducted with the Mexican Consulate. The consular official determined that Cesar was, in fact, a citizen of El Salvador. *See Department of Homeland Security (DHS) Record of Deportable/Inadmissable Alien (Form I-213) – dated September 28, 2006.*

Cesar Gomez Maldonado
Re: A99 666 843
Page 2

Cesar was placed in removal proceedings and is scheduled for a hearing before an Immigration Judge (IJ) in Chicago, Illinois, on March 08, 2007. The Office of Refugee Resettlement (ORR) initially placed Cesar with the Boystown Facility in Miami, Florida, on September 29, 2006. On October 27, 2006, he was transferred to the Southwest Indiana Regional Youth Village, where he remains in federal custody.

II. Decision

A. Consent Standards

The INA provides the Secretary with discretion to grant SIJ classification to a juvenile who has been declared dependent on a state juvenile court, has been deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment, and for whom it has been decided in administrative or judicial proceedings that it would not be in the juvenile's best interest to be returned to either his/her or his/her parents' country of nationality or country of last habitual residence. See INA § 101(a)(27)(J). However, when an alien is in the actual or constructive custody of the Attorney General, no juvenile court has jurisdiction to determine the alien's custody status or placement unless the Attorney General specifically consents to such jurisdiction.[1] See 8 USC § 1101(a)(27)(J)(iii)(I).

Therefore, a juvenile in federal custody as a result of his or her immigration status must obtain the consent of the Secretary, through ICE, prior to initiating proceedings in state court. Failure to obtain the necessary consent prior to initiating proceedings will render any order issued as a result of the proceedings invalid. If after receiving the necessary consent, a juvenile obtains the requisite rulings from state court, s/he could then petition the Secretary for an SIJ classification. See 8 CFR § 204.11(b). However, even with a proper state court order, the Secretary maintains the discretion to grant or deny the petition and must consent to the state court order serving as a basis for the claim. See 8 U.S.C. § 1101(a)(27)(J)(iii).

The SIJ statute, as originally enacted, did not require a juvenile in federal custody to obtain the consent of the Secretary prior to seeking a state court dependency order. Congress added the consent requirement in 1997 in an effort to ensure that SIJ status recipients have a special need to remain in the United States and do not use the process simply to gain an immigration benefit. See Public Law 105-119. The Conference Report on the amendment explained that the SIJ provision was being "modified in order to limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected or abused children." See H.R. Conf. Rep. No. 105-405, at 130, U.S. Code and Admin. News 1997, p. 2941, 2981 (P.L. 105-119). The Report also indicated the modified language vested the Secretary with the responsibility to ensure that "neither a dependency order nor administrative or judicial determination of an alien's best interest was sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent

---

[1] The Homeland Security Act of 2002 (HSA) transferred the authority for implementing the SIJ benefit provisions from the Attorney General to the Secretary. See HSA §§ 471(a), 451(b), and 462(c); F.L. v. Thompson, 293 F. Supp.2d 86 (D.D.C. 2003).

Cesar Gomez Maldonado
Re: A99 666 843
Page 3

residence, rather than for the purpose of obtaining relief from abuse or neglect." *Id.* The Third Circuit commented that the legislative history confirms that the revisions were intended to curtail the granting of SIJ status and demonstrates an intent to remove immigration decisions from the exclusive control of the juvenile courts and the social agencies affiliated with them. *See M.B. v. Quarantillo*, 301 F.3d 109, 114 (3d Cir. 2002); *see also Yeboah v. INS*, 345 F.3d 216, 222 (3d Cir. 2003). The consent requirement was intended as "a gatekeeping function" to reduce the numbers of alien juveniles who might achieve SIJ status. *F.L.*, 293 F.Supp.2d 86 (D.D.C. 2003).

Neither the statute nor the regulations limit the Secretary's discretion in deciding whether to consent to the custody jurisdiction of a state juvenile court. As a matter of policy and in light of the need for federal custody of the juvenile due to the ongoing immigration proceedings, DHS will only relinquish custody if the juvenile demonstrates that s/he is reasonably likely to meet the statutory and regulatory requirements necessary to obtain the SIJ classification.[2] In deciding whether to relinquish custody jurisdiction, ICE examines whether the juvenile would be eligible for SIJ status if a dependency order was issued by the state court and whether consent is being sought "primarily for the purpose of obtaining an immigration benefit," rather than for the purpose of obtaining relief from abuse or neglect. H.R. Conf. Rep. No., supra, at 130. In order to establish eligibility for SIJ status, the juvenile must demonstrate that s/he is eligible for long-term foster care due to abuse, neglect, or abandonment. *See* 8 U.S.C. § 1101(a)(27)(J)(i); 8 CFR § 204.11(c)(4). Pursuant to the governing regulations, the juvenile also must provide sufficient evidence to establish: (1) identity and that s/he is under the age of twenty-one and unmarried (8 CFR § 204.11(c)(1) and (2)); (2) that family reunification is no longer a viable option (8 CFR § 204.11(a)); and (3) that it would not be in his/her best interest to be returned to his/her or his/her parents' previous country of nationality or last habitual residence (8 CFR § 204.11(c)(6); 8 USC § 1101 (27)(J)(ii)). The burden of proof to establish these eligibility requirements is on the juvenile. *See* 8 U.S.C. § 1361; *Matter of Brantigan*, 11 I & N Dec. 493 (BIA 1966); *Vosough-Kia v. District Director*, 441 F.2d 545 (9th Cir. 1971). All of these criteria must be satisfied to establish eligibility.

B. <u>Analysis</u>

Cesar is currently being cared for by the federal government and consequently is not in need of the state's care to provide for his basic needs. Accordingly, you seek the consent of Immigration and Customs Enforcement (ICE) to allow the state juvenile court an opportunity to assume custody jurisdiction.

---

[2] Federal courts have upheld denials of SIJ consent for failure to establish a likelihood of SIJ eligibility under statutory and regulatory requirements. *See, e.g., M.B.*, 301 F.3d at 114, 115 ("Therefore, in exercising discretion to deny jurisdiction to the juvenile court, the district director, in consultation with legal counsel, can reasonably consider the requirements of a petition for special immigrant juvenile classification."); *Yeboah*, 345 F.3d 216; 223 F. Supp.2d 650 (E.D. Pa. 2002) (upholding INS' refusal to consent because there was no showing of abuse, neglect or abandonment).

Cesar Gomez Maldonado
Re: A99 666 843
Page 4

The Office of Detention and Removal carefully considered the information you provided in connection with your request as well as information provided by ICE Officers and written records pertaining to Cesar.

In support of Cesar's consent application, you submitted the following evidence: 1) Request for Juvenile Court Jurisdiction dated December 29, 2006, with attachments. *See the Request for Juvenile Court Jurisdiction from the Indiana School of Law, Indianapolis, dated December 29, 2006.*

In your consent request, you allege that Cesar is eligible for Special Immigrant Juvenile status because he has been abused and abandoned. You allege that Cesar was physically abused by his parents and then abandoned at the age of seven. *See the Request for Juvenile Court Jurisdiction from the Indiana School of Law, Indianapolis, dated December 29, 2006.*

The evidence submitted in this case does not sufficiently establish that Cesar is eligible for SIJ status. Cesar has failed to submit sufficient proof to establish his age or his identity, as is required by 8 CFR § 204.11(d)(1). That regulation requires that an alleged juvenile's age be verified by a birth certificate, passport, or official foreign identity document. *See* 8 C.F.R. § 204.11(d). Cesar has submitted none of these documents, and although you have supplied a letter showing an attempt to obtain documents from Salvadorian officials here in the United States, it appears that, lacking an exact date of birth; the place of birth; and the full names of the mother and father, they were unable to complete a search of documentation on Cesar's identity. *See letter from the Consulate General of El Salvador, dated December 12, 2006.*

In addition, although you allege that Cesar had been physically abused by his parents and abandoned by them, no evidence has been provided to support this allegation, other than Cesar's self-serving statements. Taken as a whole, Cesar's inconsistent and contradictory statements regarding his nationality; his alleged lack of knowledge of his date of birth; and the lack of information regarding his parent's identity, substantial doubt remains about his true identity.

In summary, the lack of evidence submitted to establish Cesar's date of birth and identity, in addition to Cesar's contradictory statements regarding his nationality, cast significant doubt as to the authenticity of Cesar's statements and his motives. Cesar's claim relies primarily, if not exclusively, upon his statements as no official documentation has been offered to corroborate his claims. When considering credibility, one must consider significant inconsistencies. Cesar's inconsistent and contradictory statements regarding his nationality adversely impact the credibility of his story.

While this office empathizes with Cesar's background as he has described it, the evidence submitted in this case does not sufficiently establish that he is reasonably likely to meet the eligibility requirements for SIJ status. Sufficient proof has not been submitted to establish Cesar's identity, as is required by 8 CFR § 204.11(d)(1).

Cesar Gomez Maldonado
Re: A99 666 843
Page 5

Because this mandatory element has not been sufficiently established, we need not address other eligibility requirements, including whether it would not be in his best interest to be returned to his or his parents' previous country of nationality or last habitual residence.

Consequently, Cesar's application for federal consent to the custody jurisdiction of a state juvenile court does not sufficiently establish that he is reasonably likely to meet his burden of proof in establishing the statutory and regulatory requirements for an SIJ classification. Accordingly, your request for consent is denied.

In the event you have any questions or concerns regarding this letter, please do not hesitate to contact me at 202-732-2913.

Sincerely,

John J. Pogash
Chief
National Juvenile Coordination Unit
Immigration and Customs Enforcement
Office of Detention and Removal Operations

*Certain information contained in this document may be subject to privilege. The Agency has waived said privilege for the limited purpose of this document, but does not waive any applicable privileges to information not contained herein.*