# EXHIBIT P

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

Attorneys at Law

FRAN ADEN
7132208142/fax: 712360822
faden@akingump.com

EXHIBIT
1

August 27, 2007

To Whom It May Concern:

I write to summarize my experience in seeking consent from Immigration and Customs Enforcement ("ICE") to obtain a Dependency Order from Texas state court and, ultimately, Special Immigrant Juvenile Status ("SIJ") pursuant to Section 1101(a)(27)(J) of the Immigration and Nationality Act ("INA"). Despite evidence that my juvenile client would qualify for long term foster care due to abuse and neglect under Texas law, ICE has twice denied consent to seek a dependency order from a Texas court.

My client, a seventeen year-old boy from a secluded region of Central America came to the United States in search of employment to provide financial assistance to his impoverished family. ICE detained him upon entry into this country and, during the course of a routine health screening, my client was diagnosed with Insulin Dependent Diabetes Mellitus Type I, commonly known as juvenile diabetes. Insulin Dependent Diabetes Mellitus Type I is a very dangerous condition which, if untreated, can result in death.

Juvenile diabetes will surely kill my insulin-dependent client if he is forced to return to his home country. Until he arrived in the United States, he had never before received any medical attention. In fact, insulin and medical care are not available at all to my client in his home country. Further, my client's family expects him to work to support the family without regard to his life-threatening medical condition.

Mr. Pogash, speaking for ICE, denied the first request for consent to seek a state court dependency order. In his denial, Mr. Pogash recognized that consent is appropriate only if the SIJ applicant is likely to meet the statutory requirements for SIJ classification. Mr. Pogash listed the requirements as follows:

(1) he or she is eligible for long-term foster case due to abuse, neglect, or abandonment (INA § 101(a)(27)(j)(i); 8 C.F.R. § 204.11(a));

(2) he or she is under the age of twenty-one (8 C.F.R. § 204.11(c)(1));

(3) he or she is unmarried (8 C.F.R. § 204.11(c)(2));

(4) family reunification is no longer a viable option (8 C.F.R. § 204.11(a)); and

(5) it is not in his or her best interest to be returned to his or her parents or his or her parents' previous country of nationality or last habitual residence (INA § 101(a)(27)(j)(2)(ii); 8 C.F.R. § 204.11(c)(6)).

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

August 27, 2007
Page 2

 Mr. Pogash then denied consent for my client's request because he did not appear to be abandoned, neglected or abused. Mr. Pogash did not address the additional four requirements because it was clear to him that my client did not meet the first one.

 After receiving this denial, I sent another request to ICE asking Ms. Evans, Mr. Pogash's successor, to reconsider Mr. Pogash's denial. The second request explained that under the plain meaning of the words abuse and neglect, and under Texas law, my client had been abused and neglected. The second request further explained that Texas law recognizes the failure to provide or seek medical treatment as grounds for terminating parental rights. Finally, the second request informed Ms. Evans that Texas law also allows a court to terminate the parent-child relationship if the court finds that the parent knowingly placed or allowed a child to remain in conditions or surroundings that endanger the child's physical or emotional well-being. In his home country, my client was abused and neglected because his parents failed to seek medical attention for him and allowed him to remain in conditions which endangered his life.

 Despite the clear evidence that my client is likely eligible for a dependency order based on abuse or neglect under Texas law, Ms. Evans also denied the second request for consent. She provided no additional analysis aside from the analysis Mr. Pogash provided in his denial.

 Please do not hesitate to contact me if you need further information.

Sincerely,

*Fran R. Aden*

Fran R. Aden



**ayuda**

August 27, 2007

To Whom It May Concern:

In my capacity as the Director of the Children's Project at Ayuda, Inc., a non-profit organization in Washington, D.C., I provide legal representation to unaccompanied immigrant children throughout the D.C. metropolitan area, including children in the custody of the Office of Refugee Resettlement (ORR) in Richmond, VA. On behalf of my clients, I have submitted requests for Specific Consent in Special Immigrant Juvenile Status (SIJS) cases to both the previous and current Juvenile Coordinators of Immigration and Customs Enforcement (ICE). While the previous Juvenile Coordinator, John Pogash, granted all of my requests for Specific Consent, of the two requests that I have submitted to the new Juvenile Coordinator, Mary Yvonne Evans, she denied one and continues to review the other, which we submitted over four months ago.

The child who was the recipient of this recent denial has suffered extreme physical, emotional, psychological, and possibly even sexual abuse at the hands of his biological father, an alcoholic and drug addict who abused the child on a daily basis. Although the child, with his two younger brothers in tow, fled to the streets of their native Guatemala to escape the abuse, their father continued to pursue them and abuse them for the nearly two years that the children survived as street children. In fact, the permanent and painful physical injuries that my client sustained to each of his legs on account of his father's abuse did not occur until after he and his siblings fled to the streets.

The child's ORR file is replete with documentation of his history of severe child abuse. Specifically, it includes two psychological evaluations, a physical examination of the child's injured legs, a report from the ORR Field Specialist assigned to the child's case, and dozens of case notes from ORR case workers and social workers reflecting conversations with the child about the abuse he suffered.

In spite of the overwhelming evidence that my client came to the United States to seek protection from severe child abuse, Ms. Evans pointed to minor inconsistencies and irrelevant information to conclude that my client was not credible and that he had come to the United States merely seeking economic opportunity. In concluding that my client was not credible, Ms. Evans relied on the fact that when apprehended, my client gave Border Patrol aliases for himself and his parents, and the fact that during his initial intake interview with an ORR case worker, which took place in Spanish, a language he only learned after his arrival in the United States, and only hours after his arrival at the facility, he denied being abused or living on the streets. Moreover, Ms. Evans pointed to notes from ORR case workers indicating that the child's younger siblings are now living with

---

an aunt in Guatemala, as well as phone calls to that aunt, to conclude that the child lived with his aunt in Guatemala, not his father, and that neither his aunt nor his father abused him. Finally, Ms. Evans relied on notes from ORR case workers stating that the child was concerned about the welfare of his younger brothers and being able to support them, as he had done for the two years that they lived on the streets, to conclude that his motives in coming to the United States were purely financial.

After reviewing my client's ORR file in its entirety, any reasonable fact finder would logically conclude that my client was the victim of severe child abuse and came to the United States in search of a safe haven. The fact that Ms. Evans denied Specific Consent in this case despite incontrovertible evidence of abuse, as well as the reasons that Ms. Evans gave for her denial, lead me to conclude that she did not engage in an objective review of my client's case, but rather combed through his ORR file in search of minor inconsistencies and irrelevant information that she could mischaracterize in order her pre-formed intent to deny Specific Consent.

If you have any additional questions about this case, or if I can provide additional information, please do not hesitate to contact me at (202) 243-7312 or cwiltes@ayudainc.org.

Sincerely,



Christina Wiltes, Esq.
Children's Project Director

---

# HIAS
## HIAS AND COUNCIL
### MIGRATION SERVICE OF PHILADELPHIA

Non-Profit Legal and Social Services for Immigrants and Refugees

*Helping to Reach the Dream*

August 27, 2007

Mr. Greg Moore, Esq.
Fulbright & Jaworski L.L.P.
VIA FACSIMILE: (713) 651-5246

RE: Recent Denial by ICE of Consent to Proceed with Dependency Proceedings

Greetings:

Our office represents three children whose consent requests have been denied by ICE. In each denial, ICE ignores evidence of abuse, neglect and abandonment. ICE relies heavily on intake forms from CBP (Form I-213) and initial intake assessments from the ORR shelters. Even when further investigation reveals to shelter caseworkers, counselors, and psychologists that there is a history of child abuse or abandonment and this abuse is recorded, ICE denies consent.

When determining consent, the best interest of the child should be the primary factor. In accordance with the Thomas E. Cook Memorandum dated July 9, 1999, "in general, consent should be given if doing so served the best interests of the child, and if the child would be eligible for special immigrant juvenile classification." *M.B. v. Quarantillo*, 301 F.3d 109 (3d Cir. 2002). The recent responses have clearly strayed from this intent.

Our office believes that all three juveniles are dependent in Pennsylvania and eligible for Special Immigrant Juvenile Status. Pursuant to the Pennsylvania Juvenile Act (Juvenile Act) a child is "dependent" if the child:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;
(2) has been placed for care or adoption in violation of law;
(3) has been abandoned by his parents, guardian, or other custodian;
(4) is without a parent, guardian, or legal custodian . . . ;

2100 Arch Street
3rd Floor
Philadelphia, PA 19103
Tel: 215.832.0900
Fax: 215.832.0919
www.hiaspa.org

---

42 Pa.C.S.A. §6 302. Sections 1-4 are Pennsylvania's equivalent of "abandonment" and "abuse" in INA § 101(a)(27)(J). Actions such as, hitting, beating, hair pulling, burning with hot coals, depriving medical attention, and not living with the child, are abuse and abandonment that would render the child dependent in Pennsylvania.

Apolonio Osmundo Felix Ramirez, Brenda Perez Perez (a.k.a. Perez Mejia), and Bayron Alexander Urquia Gomez (a.k.a. Lagos Velásquez) have requested consent to proceed with dependency proceedings in Pennsylvania. They have each been denied this consent. We have included an outline of each case.

### 1. Apolonio Osmundo Felix Ramirez

Apolonio Osmundo Felix Ramirez (A99 651 033) is an 18-year-old national of Guatemala. ICE denied Apolonio's consent request on May 17, 2007 on the grounds that the record reflected that he had come to the United States not because of abuse, abandonment or neglect but solely to work. ICE also used the administrative record to claim that Apolonio actually came from a loving home.

The record, read in its entirety, presents a different picture. Apolonio was forced to leave his home because of the physical abuse he suffered at the hands of his alcoholic father. He also left the home in order to provide for his 8 siblings who relied almost exclusively upon him and his older siblings because of the father's alcoholism. Before coming to the United States, Apolonio's mother had also become an alcoholic thereby increasing the demands upon our client to provide for his siblings.

ICE ignores the detailed affidavit and psychological evaluation that was submitted with the consent request and characterizes our client's reason for coming to the U.S. as solely for economic reasons. The alcoholism and abuse detailed in the application are ignored as is the fact that the child left the home at 12 years of age.

This case is currently on appeal before the United States District Court for the Eastern District of Pennsylvania.

### 2. Brenda Perez Perez (a.k.a. Perez Mejia)

Brenda Perez Perez (A88-020-304) is a 17-year-old national of Guatemala. ICE denied Brenda's consent request on July 10, 2007 on the grounds that Brenda "does not appear to be a victim of abandonment, neglect, or abuse and that she is seeking SIJ consent "primarily for the purpose of obtaining an immigration benefit." ICE explicitly refuses to consider whether remaining in the U.S. would be in Brenda's best interest.

ICE used parts of the ORR shelter record to draw the conclusions that "Brenda enjoyed a close, loving relationship with her family." To support this, ICE states that Brenda named her father as the contact and gave her family home phone number as the emergency contact. She also called this phone number several times. ICE also states that no evidence was presented to show that her mother abandoned her.

We do not have access to the complete record. However, evidence of abuse and abandonment was presented. In fact, we believe that the ORR shelter's record includes this information. Brenda's case manager at the shelter concluded in a letter submitted to ICE that Brenda was abandoned by her mother as an infant, Brenda was a victim of physical abuse by her father ("including hitting, punching, slapping, and having objects thrown at her"), she has worked full time in the family store and was beat when she protested. ICE ignored this portion of the record and only focused on initial intake forms to make this decision. Brenda's birth certificate also shows that her mother does not have the same name as the woman living with her father, whom Brenda consistently has explained is her father's girlfriend. Despite this, ICE assumes that this woman is Brenda's mother and that she was not abandoned by her mother. Given the extensive abuse that Brenda suffered, the relevance of this was never clarified.

We have submitted a request for reconsideration on this case. Included in this request is a detailed statement from Brenda and letters from her siblings and father's girlfriend.

2. Bayron Alexander Urquia Gomez (a.k.a. Bayro Lagos Velásquez)

Bayron Alexander Urquia Gomez (A#88-017-784) is a 14-year-old national of Honduras. ICE denied Bayron's consent request on July 9, 2007 on the grounds that the record reflected that he had come in the United States, at the age of 13, not because of abuse, abandonment or neglect but solely to seek an immigration benefit. ICE bases its decision on some inconsistencies in dates of when he was living in certain places, that he did not reveal abuse during initial intake interviewing, that in his statement he described his sister's boyfriend as not being "as bad" as in the past, and that he referred to his sister's boyfriend as his brother. Even though ICE did not reveal any evidence of a parent in Bayron's life, their response concluded that he was not abandoned.

We do not have access to the entire record. However, a lengthy affidavit from Bayron and a psychological evaluation detailed (to the best of Bayron's ability) his life. He never knew his father, he was abandoned by his mother at age six and left in the care of an abusive step-father, he was thrown out of this house and lived in the streets. This sent some time living with an older sister and her boyfriend who abused him. This boyfriend eventually brought Bayron to the U.S. and he was told to tell everyone that they were brothers.

ICE ignores the fact that Bayron has not lived with a parent since the age of six. Even today he is only fourteen years old. The evidence of abandonment is strong, yet ICE denies consent. We are in the process of preparing a motion to reconsider this decision.

These children are clearly seeking relief from abuse, abandonment and neglect. We understand that these denials are a part of a national trend. If our office can provide any further assistance, please contact me at (215)832-0900.

Sincerely,

Maggie Niebler, Esq.
Staff Attorney